THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOROTHY DAVIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 07 C 2881 |
| WELLS FARGO BANK, PARAGON FINANCIAL CORP., d/b/a PGNF HOME LENDING CORP., and LITTON LOAN SERVICING, | ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Marvin E. Aspen, District Judge:

Dorothy Davis ("Davis") filed an eight-count amended complaint against Wells Fargo Bank ("Wells Fargo"), Paragon Financial Corporation ("Paragon"), and Litton Loan Servicing ("Litton"), alleging various federal and state law claims. Before us is a motion from Litton and Wells Fargo (collectively "the Defendants") to dismiss each of Davis's claims.[1] For the reasons set forth below, Defendants' motion is granted in part and denied in part.

BACKGROUND

Davis is an elderly, African-American widow. (Amended Compl. at ¶ 14.) At all times relevant to this litigation she resided in the single family home that she owned in Kankakee, Illinois. (*Id.*) On or about September of 1999, Larry Turner ("Turner"), a neighbor's repairman, approached Davis and pointed out repairs that he thought she should complete on her garage and

---

[1] Paragon did not join in this motion to dismiss.

1

house. (*Id.* at ¶ 18.) In order to pay for the repairs, Turner offered to arrange a new home loan for Davis at a better rate than she was paying on her current mortgage. (*Id.* at ¶ 19.)

Turner arranged a loan for Davis with "Mortgage Express."[2] (*Id.* at ¶ 21.) Davis alleges that on September 23, 1999, Turner came to her house with Frank Saenz ("Saenz"), a Mortgage Express agent, in order to close the loan. (*Id.* at ¶ 23.) At the closing Davis objected to the terms of the loan, but she alleges that Turner strongly pressured her to sign the loan papers, which she did without reading or knowing their terms. (*Id.* at ¶ 24.) The new mortgage on Davis's house was for $87,550 including settlement charges of $32,916.10. (*Id.*) Turner and Saenz left without giving Davis copies of the papers she had signed. (*Id.*)

Davis alleges that on the date of the loan closure, Mortgage Express assigned her mortgage to The Provident Bank ("Provident") (*Id.* at ¶ 2) and that on the same day, Provident transferred her mortgage to Wells Fargo. (*Id.* at ¶ 48.) Then, at some point, Wells Fargo allegedly contracted with Litton to service the mortgage. (*Id.* at ¶¶ 6, 11.)

Plaintiff's first contact with Litton was through a loan-modification agreement dated September 28, 2005. (*Id.* at ¶ 7.) According to the complaint, this agreement may have arrived six months before Wells Fargo was assigned the mortgage. (*Id.*) However, the complaint also alleges that Paragon assigned the mortgage to Wells Fargo on September 23, 1999, the same date as the loan closing. (*Id.* at ¶ 48.)

Since its inception, the mortgage has been the subject of multiple suits. On March 23, 2001, Davis sued Long Beach Mortgage Company (apparently the owner of Davis's original

---

[2] Mortgage Express is either the same entity as Paragon, or is related to Paragon through Philip Lagori, the "owner or president" of Mortgage Express and a director of Paragon. (Amended Compl. at ¶ 6.)

mortgage, before she refinanced with Mortgage Express), Mortgage Express, and Personal Mortgage, Inc. in this court, alleging various federal and state causes of action relating to the origination of her mortgage with Paragon. (*Id.* at ¶ 1.) *See Davis v. Long Beach Mortgage Co.*, No. 1:01-cv-02059 (N.D. Ill. Mar. 23, 2001) (complaint). On August 21, 2001, Davis's motion for voluntary non-suit was granted and her action was dismissed without prejudice. *Davis v. Long Beach Mortgage Co.*, No. 1:01-cv-02059 (N.D. Ill. Aug. 21, 2001) (order granting voluntary non-suit).

On September 5, 2001, Davis re-filed her complaint in Kankakee County, Illinois and her case went to trial on February 14, 2007. (Compl. at ¶ 9.) Davis received a $136,500 judgment against Paragon for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. (*Id.*) Neither Wells Fargo nor Litton were party to the Kankakee County suit. (*Id.*)

While the Kankakee County case was pending, a foreclosure action was filed against Davis in the Kankakee County Court, Chancery Division. (*Id.* at ¶ 4.) Davis responded to the foreclosure with affirmative defenses based on Illinois law. (*Id.* at ¶ 5.) On January 18, 2007, Wells Fargo petitioned to substitute itself as the plaintiff in this foreclosure action and to sever Davis's affirmative defenses related to the closing costs of her mortgage. (*Id.* at ¶ 8.) This motion was granted.[3] (*Id.*)

Davis now alleges additional wrongful action by Litton and Wells Fargo since the Kankakee County verdict. According to the complaint, after that verdict, Davis received a payoff statement from Litton and Wells Fargo demanding payment of $157,497.27. (*Id.* at ¶ 11.)

---

[3] The complaint does not clarify or indicate whether the foreclosure action is still pending or whether there is any additional pending litigation regarding the severed affirmative defenses.

Davis alleges that this payoff statement included demands for closing and settlement fees which were found to be illegal in the Kankakee County trial. (*Id.*)

Based on these facts Davis brings a seven-count complaint alleging[4]: that the loan was unconscionable ("Count 1"); that the Defendants engaged in fraud ("Count 2"); that the Defendants violated Home Ownership Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 ("Count 3"); a violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.* ("Count 4"); a violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* ("Count 5"); that the Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 ("Count 6"); and violations of the Fifth Amendment to the U.S. Constitution ("Count 7").[5] Defendants now move to dismiss each count as barred by the applicable statutes of limitations, res judicata and claim splitting, and for failure to state a claim.

## STANDARD OF REVIEW[6]

The purpose of a motion to dismiss under 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520

---

[4] While we note that Davis's Amended Complaint is arranged in a slightly different order consisting of seven causes of action and omitting a sixth cause of action, we will number the counts as indicated above.

[5] Because Davis did not substantively reply to the Defendants' motion to dismiss Count 7, it is dismissed. *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1043 (7th Cir. 1999) ("[B]y failing to respond responsively to the motion to dismiss . . . [the Plaintiff] forfeited her right to continue litigating her claim.").

[6] While the Defendants bring their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), we will discuss all of their arguments under Rule 12(b)(6). *See Xechem, Inc. v. Bristol-Myers Squibb, Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (explaining that a 12(b)(6) motion can address statute of limitations issues under specific circumstances); *Brzostowski v. Laidlaw Waste Sys. Inc.*, 49 F.3d 337, 338 (7th Cir. 1995) (res judicata); *Spann v. Cmty. Bank of N. Va.*, No. 03 C 7022, 2004 WL 691785 (N.D. Ill. March 30, 2004) (HOEPA); *Ross v. Midland Mgmt. Co.*, No. 02 C 8190, 2003 WL 21801023 (N.D. Ill. Aug. 1 2003) (FHA); *Hamilton v. O'Connor Chevrolet, Inc.*, No. 02 C 1897, 2003 WL 22953337 (N.D. Ill. Dec. 12, 2003) (ECOA); *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459 (7th Cir. 1993) (RICO).

(7th Cir. 1990). Accordingly, a court may grant a motion to dismiss under Federal Rule of Procedure 12(b)(6) only if a complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007); *see also Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618-19 (7th Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007). A sufficient complaint need not give "detailed factual allegations," but it must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 127 S. Ct. at 1964-65; *Killingsworth*, 507 F.3d at 618-19. These requirements ensure that the defendant receives "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 102 (1957)); *see also* Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Thompson v. Ill. Dep't. of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

## ANALYSIS

The Defendants argue that we should dismiss each count under the applicable statutes of limitations, res judicata and claim splitting, and for failure to state a claim. We will address each of these arguments below.

**A. Statute of Limitations**

First, the Defendants argue that each count is time barred by relevant state and federal statutes of limitation. Davis does not dispute that she filed her action more than seven years after entering into the loan now owned by Wells Fargo, nor that the statutory period for each claims is between one and five years. Counts 1 (unconscionability) and 2 (fraud) have five year statutes

of limitations. 735 ILCS 5/13-205. Count 3 (HOEPA) has a one year statute of limitations for monetary damages, 15 U.S.C. § 1640(e), and a three year statute of limitations for rescission, 15 U.S.C. § 1635(f). Counts 4 (FHA) and 5 (ECOA) have two year statutes of limitations. 42 U.S.C. § 3613(a)(1)(A) (FHA); 15 U.S.C. § 1691e(f) (ECOA). Count 6 (RICO) has a four year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156, 107 S. Ct 2759, 2767 (1987).

Statutes of limitations serve as affirmative defenses—because plaintiffs need not include responses to affirmative defenses in their complaints, such affirmative defenses may only support a motion to dismiss "when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense." *Xechem*, 372 F.3d at 901; *see also Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("[W]hen the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit.").

Davis argues, however, that the Seventh Circuit's requirement that the statute of limitations does not present an "impenetrable defense" because her allegations represent a single, continuous violation of the law. Under both Illinois and federal law, statutes of limitations may be held in abeyance for such continuous violations.

*I. Illinois Continuing Violation Analysis*

Under Illinois law, for the doctrine of continuing violation to apply, violations must be so "continuous and unbroken . . . as to constitute one continuing wrong." *Belleville Toyota, Inc. v. Toyota Motor Sales*, 199 Ill.2d 325, 346-49, 770 N.E.2d 177, 191-93 (Ill. 2002). For example, the *Belleville* court refused to find a continuing violation in repeated violations of the Illinois

6

Motor Vehicle Franchise Act because each offense "was the result of discrete decisions" rather than a single decision to engage in a repeated and long-term violations of the law. *Id.* at 348; *see also Evans v. City of Chi.*, 434 F.3d 916, 934-35 (7th Cir. 2006) (in § 1983 claim, continuing violation does not extend beyond the most recent interaction between the plaintiff and defendant police officers); *but see Feltmeier v. Feltmeier*, 207 Ill.2d 263, 280, 798 N.E.2d 75, 86 (Ill. 2003) (spousal abuse over a twelve year period constitutes a single, continuing violation, rather than many distinct violations). Like the violations in *Belleville*, the origin of Davis's mortgage, the proposed loan-modification, and the demand for payment are the results of discrete decisions, in this case discrete decisions by different parties. These allegations are not directly connected by single decisions made by the Defendants, nor are they sufficiently "continuous and unbroken" to satisfy the *Belleville* standard. Thus, Davis's detailed complaint forecloses application of the Illinois continuing violation doctrine to Counts 1 and 2.

*ii. Federal Continuing Violation Analysis*

Federal common law adopts a slightly different standard, allowing consideration of a continuing violation "when it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (period during which inmate was denied treatment for his hernia constitutes a continuing violation, rather than a series of independent denials of treatment because it would be unreasonable to require or allow a different suit for each day that he was denied care); *see also Filipovic v. K & R Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999) (harassment and name-calling over a thirteen year period do not constitute a continuing violation because any pattern was evident within the statutory period, thus it is reasonable to require the

7

plaintiff to file suit then); *cf. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072 (2002) (allowing lower federal courts to apply equitable tolling doctrines in employment discrimination cases "sparingly" and reversing the Ninth Circuit's application of the continuing violation doctrine). Unlike the denial of treatment considered in *Heard*, it would not be unreasonable to permit Davis to instigate separate suits based on the origin of the loan, the later modification agreement, and the demand for payment. In fact, the Kankakee County Court did conduct a trial solely related to the origination of the loan. That Davis litigated the suit in Kankakee County before Litton had proposed the loan modification or demanded payment is also strong evidence that it is reasonable to require her to litigate these latter actions separately. Because it is not unreasonable to require or allow her to engage in litigations regarding those claims separately, the federal continuing violation doctrine does not apply and the relevant federal statutes of limitations thus apply to Counts 3, 4, 5, 6, and 7.

This does not end the inquiry. Even if all of Davis's allegations may not be considered as a continuing violation, "[e]ach discrete act with fresh adverse consequences starts its own period of limitations." *Xechem*, 372 F.3d at 902. Davis's complaint includes some recent allegations that fall within the relevant statutes of limitations. Specifically, she identifies three such recent events: (1) She received a proposed loan-modification agreement from Litton dated September 28, 2005, one that she alleges Litton was not authorized to execute; (2) Wells Fargo identified itself as the owner of her mortgage for the first time on January 18, 2007; and (3) In March, 2007, Litton unlawfully demanded that she pay off the loan and fees found to be illegal in the Kankakee County Court. To the extent that these recent allegations fit within the claim-

8

specific statutes of limitations, Davis may use them to state her claims. Thus, none of Davis's counts may be dismissed based on the statutes of limitations alone.

**B. Sufficiency of Allegations**

Because none of Davis's claims may be dismissed based solely on the relevant statutes of limitations, the sufficiency of the allegations must be considered for each count. However, for each count, only events occurring within the relevant statutory periods need be considered. Counts 1, 2, 4, 5, and 6 each have statutory periods of two or more years. These counts may be supported by any of the three recent allegations in Davis's complaint: That Litton sent her a proposed loan-modification agreement dated September 28, 2005, that Wells Fargo identified itself as the owner of her mortgage for the first time on January 18, 2007, and that in March, 2007 Litton demanded that she pay off the loan. Monetary damages under Count 3 have a statute of limitations of one year, and thus may only be supported by the two most recent allegations.

*I. Count 1: Unconscionability*

To state a claim for unconscionability, Illinois law requires plaintiffs to allege either "some impropriety during the process of forming the contract depriving a party of a meaningful choice," or contract terms that are "inordinately one-sided in one party's favor." *Kinkel v. Cingular Wireless*, 223 Ill. 2d 1, 22-39, 857 N.E.2d 250, 264-73 (Ill. 2006) (quoting *Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75, 100, 854 N.E.2d 607, 622 (Ill. 2006)). Davis's allegations that fall within the relevant five-year statute of limitations do not include formation of a contract, and thus may not state a claim for unconscionability.

9

*ii. Count 2: Fraud*

Similarly, Davis's allegations that are not barred by the five year statute of limitations fail to state a claim for fraud. Under Illinois law, fraud requires a false statement upon which the plaintiff relied to her detriment. *Bd. of Educ. of City of Chi. v. A, C & S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580, 591 (Ill. 1989); *Fox v. Heiman*, 375 Ill. App. 3d 35, 47, 872 N.E.2d 126, 138 (1st Dist. 2007). While Davis's allegation that Wells Fargo did not identify itself as the owner of her mortgage until January 18, 2007 could constitute a false statement, she does not allege that she relied to her detriment on any statements as to who was the true owner of her mortgage. Any other allegations that could state a claim for fraud fall outside of the five year statute of limitations. Thus, Count 2 is dismissed.

*iii. Count 3: HOEPA*

HOEPA requires that creditors provide disclosures before completing certain mortgage transactions. 15. U.S.C. § 1639; *see also Cunningham v. Nationscredit Fin. Svcs.*, 497 F.3d 714, 717 (7th Cir. 2007) ("HOEPA . . . requires lenders to make . . . disclosures to borrowers of 'high-cost' or 'high-rate' loans.").[7] Davis alleges that the Defendants failed to make these disclosures at her loan closing on September 23, 1999. As indicated above, HOEPA claims have a one year statute of limitations for monetary damages, 15 U.S.C. § 1640(e), and a three year statute of limitations for rescission, 15 U.S.C. § 1635(f). Davis does not allege that she closed a mortgage transaction within either of these periods, thus her allegations cannot support her HOEPA claim.

---

[7] Because the closing of Davis's mortgage falls outside the relevant statute of limitations, it is unnecessary to consider whether is constitutes a "high-cost" loan.

*iv. Count 4: FHA*

The FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Davis alleges that after she received a favorable verdict in the Kankakee County Court on February 14, 2007, Litton and Wells Fargo demanded payment of $157,497.27, the full value of her mortgage. She further alleges that this action, and other time-barred actions, were discriminatory on the basis of her race.

Whether Davis has stated a claim under the FHA depends on whether Litton's demand for payment qualifies as "the provision of services" under 42 U.S.C. § 3604(b). The most common application of the word "services" within the statute has been to "services generally provided by governmental units." *Southend Neighborhood Improvement Ass'n v. Cty of St. Clair*, 743 F.2d 1207, 1210 (7th Cir. 1984) (considering tax administration to be outside of the "services or facilities" language because it is not sufficiently like police or fire services traditionally included in the statute); *see also Campbell v. City of Berwyn*, 815 F. Supp. 1138, 1143-44 (N.D. Ill. 1993) (racial discrimination in provision of police protection is sufficient to state a claim under the FHA). However, the Seventh Circuit has taken a broad reading of Section 3604(b) that goes beyond police and fire services. In *NAACP v. American Family Mutual Insurance*, the Seventh Circuit applied the word "services" in Section 3604(b) to insurance providers, interpreting the passive construction of the statute to include discriminatory provision of services generally, not merely government entities. 978 F.2d 287, 299-300 (7th Cir. 1992); *see also Nat'l Fair Hous. Alliance v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 57

11

(D.C.C. 2002) (including insurance under the rubric of "provision of services"); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1358 (6th Cir. 1995) (same); *contra Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 424 (4th Cir. 1984) (insurance redlining is not prohibited by the FHA). The Seventh Circuit's broad reading of Section 3604(b) and its application to insurance services suggests that 3604(b) is broad enough to encompass discriminatory services in administering a mortgage. Because Davis has alleged discrimination in the administration of her mortgage, the Defendants' motion is denied with respect to plaintiff's FHA claim arising out of events within the two year statute of limitations established by 42 U.S.C. § 3613(a)(1)(A).

*v. Count 5: ECOA*

ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race." 15 U.S.C. § 1691(a). In order to state a claim under this statute, a plaintiff must allege that she was an "applicant", and that a creditor treated her less favorably on the basis of her race. *Gallegos v. Rizza Chevrolet, Inc.*, No. 03 C 4237, 2003 WL 22326523, at *2 (N.D. Ill. Oct. 9, 2003) (explaining requirements for stating a claim under ECOA); *see also Moran Foods, Inc. v. Mid-Atlantic Mkt. Dev.*, 476 F.3d 436, 441 (7th Cir. 2007) (dismissing ECOA claim because guarantor did not qualify as an applicant). The statute defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). Davis's allegations that fall within ECOA's two-year statute of limitations, however, do not include any allegations that she applied to a creditor for an extension, renewal, or

continuation of credit. Thus Davis's non-time barred allegations do not show that she qualifies as an "applicant" under the statute and her ECOA claim is dismissed.

*vi. Count 6: RICO*

To state a RICO claim, a plaintiff must identify an enterprise that has engaged in a pattern of racketeering activity. *Jennings v. Emry*, 910 F.2d 1434, 1438-39 (7th Cir. 1990); *Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858, 872 (N.D. Ill. 2007). To establish a pattern, a plaintiff must allege at least one of the acts listed in 18 U.S.C. § 1961(1). *Jennings*, 910 F.2d at 1438. Davis's complaint, however, does not allege any of the predicate acts established by the statute.[8] Davis's complaint simply states, in a conclusory fashion, that the Defendants' actions constitute a pattern of racketeering activity, without identifying which predicate acts the Defendants have engaged in. The Seventh Circuit faced just such a conclusory allegation in *Jennings* where the plaintiff stated that the defendants had engaged in a pattern of racketeering activity without identifying any of the necessary predicate acts. *Id.* at 1439. The Court affirmed the dismissal of the complaint for failing to include any allegations that would support the RICO claim. Similarly, Davis's allegations do not include any allegations that the Defendants engaged in any of the necessary predicate acts, and so can not support her RICO claim.

---

[8] Davis alleges no actions which fit within any of the subsections of 18 U.S.C. § 1961(1). She alleges no "act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical" pursuant to (1)(A). She alleges no act indictable under the statutes listed in (1)(B) or (1)©. She alleges no title 11, securities, or controlled substance or listed chemical fraud pursuant to (1)(D). She alleges no act indictable under the Currency and Foreign Transactions Reporting Act as provided by (1)(E). She alleges no act indictable under the Immigration and Nationality Act as provided by (1)(F), and she alleges no terrorist crime as provided by (1)(G).

## CONCLUSION[9]

For the reasons discussed above, Defendants' motion to dismiss is denied in part as to Plaintiff's FHA claim, and granted as to all other counts. It is so ordered.

*[signature]*
MARVIN E. ASPEN
United States District Judge

Date: April 17, 2008

---

[9] We need not reach the issues of res judicata or claim preclusion, or the Rooker-Feldman doctrine, because the remaining claims rest exclusively on alleged actions occurring after the relevant state court decisions.