**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DOROTHY DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07 C 2881 |
| | ) | |
| WELLS FARGO BANK, | ) | |
| WELLS FARGO AND COMPANY, and | ) | |
| LITTON LOAN SERVICING, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Dorothy Davis alleges that Wells Fargo, N.A. ("Wells Fargo") and Litton Loan Servicing, LP ("Litton")—the current owner and servicer of her mortgage, respectively—have violated the Fair Housing Act ("FHA"). Davis claims that Defendants wrongfully and discriminatorily continue to demand payment on her mortgage despite their knowledge that the initial mortgagee, Mortgage Express, Inc., defrauded her. Presently before us are the parties' cross-motions for summary judgment, as well as a motion to strike filed by Defendants. For the reasons discussed below, we grant Defendants' motions and deny Davis's motion.

## BACKGROUND[1]

On September 23, 1999, Davis executed a mortgage with Mortgage Express, for a home loan in the principal amount of $87,550.00. (Defs.' Facts ¶¶ 1, 7.) Several years later, Davis sued Mortgage Express for violation of the Illinois Consumer Fraud and Deceptive Business

---

[1] Unless otherwise noted, the facts described herein are undisputed and culled from the parties' Local Rule 56.1 statements of fact and exhibits.

Practices Act.  (*See id.* ¶ 11; Pl.'s Facts, Ex. A, *Davis v. Mortgage Express, Inc.*, No. 01-105, slip. op. at 1 (Cir. Ct. Kankakee Cty. Feb. 22, 2007) [hereinafter *Fraud Order*].)  In February 2007, a jury found Mortgage Express liable to Davis for $136,500 plus costs for its fraudulent conduct in the mortgage transaction.  (Defs.' Facts ¶ 12; *Fraud Order* at 1–2.)

In the meantime, Mortgage Express sold the mortgage to The Provident Bank, who then sold it to Wells Fargo in its capacity as trustee for certain asset-backed certificates.[2]  (Defs.' Facts, Ex. 1, 10/16/09 Ledet Aff., Exs. A, C; *id.* Ex. 2, 10/21/09 Cohen Aff. ¶¶ 5–6.)  Litton began servicing Davis's loan on December 1, 2004.[3]  (Defs.' Facts ¶ 36.)  PCFS Mortgage Resources was the prior loan servicer.  (Defs.' Facts, Ex. 1, 10/16/09 Ledet Aff. ¶ 11 & Ex. B.)  For their part, neither Wells Fargo, nor Litton, originated Davis's loan or lent her any money.[4] (Defs.' Facts ¶¶ 13, 19.)

In 2002, PCFS Mortgage Resources initiated a foreclosure proceeding against Davis, who allegedly had failed to make her monthly payments.[5]  (Defs.' Facts, Ex. 1, 10/16/09 Ledet

---

[2] Based on the record before us, The Provident Bank assigned the Davis loan to Wells Fargo, as a trustee for a pool of loans, on or about March 3, 2006.  (Pl.'s Facts, Ex. H, 04/02/09 Cohen Aff. ¶ 4; Defs.' Facts, Ex. 2, 10/21/09 Cohen Aff. ¶¶ 5–6, 11–12.)

[3] Although Davis denies this fact, she discusses only her confusion about when Wells Fargo took over the mortgage and admits that she does not know when Litton became the servicer.  (Pl.'s Resp. to Defs.' Facts ¶ 36.)  Accordingly, the testimony of Janice Ledet on this point is uncontroverted.  (Defs.' Facts, Ex. 1, 10/16/09 Ledet Aff. ¶ 11.)

[4] Davis attempts to deny Defendants' Facts ¶ 19, as to Wells Fargo, but her response is inadequate and we thus deem this fact admitted.  (*See* Pl.'s Resp. to Defs.' Fact ¶ 19 (denying this fact without any citation to support in the record and incorporating irrelevant arguments).)  Davis in fact testified that neither Litton, nor Wells Fargo, loaned her any money.  (Pl.'s Facts, Ex. B, Davis Dep. at 25, 27.)

[5] According to her deposition, Davis became unable to pay her mortgage sometime in late 2001.  (Pl.'s Facts, Ex. B, Davis Dep. at 13–15, 24.)

Aff. ¶¶ 22–23.)  Although Wells Fargo pursued the foreclosure matter after it took over Davis's loan, it was ultimately unsuccessful.  (Pl.'s Facts, Ex. G, *Wells Fargo v. Davis*, No. 02-197, slip op. at 1, 3–4 (Cir. Ct. Kankakee Cty. Feb. 27, 2008) [hereinafter *Foreclosure Order*].)  The Kankakee County court found that Wells Fargo failed to prove its damages and thus, denied the claim.  (*Foreclosure Order* at 3.)  The court found that Davis would be entitled to assert affirmative defenses against foreclosure based on her arguments in the fraud case against Mortgage Express.  (*Id.*)  The court stressed, however, that it based its ruling only on Wells Fargo's lack of proof and that it made no "determination that the note and mortgage currently held by [Wells Fargo] are totally invalid and unenforceable."  (*Id.* at 4.)

While the foreclosure case was pending, Davis filed this action on May 23, 2007.  Davis alleges that Defendants are in violation of the FHA because they attempted to foreclose on her home and continued to demand repayment of the loan and related fees, even though they knew that an Illinois jury had already found these debts to have been based on fraud.  (*See* Pl.'s MSJ Mem. at 2, 7.)  Davis contends that Wells Fargo wronged her and, as a remedy, should be required to pay her at least what the Kankakee jury awarded her, as described in the *Fraud Order*.  (Pl.'s MSJ Mem. at 3; *see also* Pl.'s Facts, Ex. B, Davis Dep. at 18, 26–28.)  Davis testified, in short, that she believed that Wells Fargo was responsible for the Kankakee jury award against Mortgage Express and that Wells Fargo would have paid those damages if she was not an "old, black lady."  (Pl.'s Facts, Ex. B, Davis Dep. at 27; *see id.* at 26–28.)

## I.      DEFENDANTS' MOTION TO STRIKE

Before addressing the merits of the pending summary judgment motions, we must first resolve Defendants' motion to strike.  Defendants ask that we strike four of the affidavits

submitted by Davis in support of her motion for summary judgment. (Mot. to Strike at 1.) For the reasons discussed below, we grant this motion in its entirety and strike Davis's Exhibits M through S.

Generally speaking, any supporting affidavit at the summary judgment stage "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Any documents referred to in an affidavit "must be attached or served with the affidavit." *Id.* In lieu of sworn affidavits, parties may also submit declarations pursuant to 28 U.S.C. § 1746, which requires the declarant to verify, "under penalty of perjury," that his or her statements are "true and correct." 28 U.S.C. § 1746(2). Statements that fail to comply with these requirements are inadmissible. *See Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004) ("A court must not consider . . . an affidavit that fail[s] to meet the standards of Rule 56(e) when considering summary judgment.").

### A. Declarations[6] of Geoffrey Smith and Nick Bianchi

Davis submitted a § 1746 declaration from Geoffrey Smith, who is associated with the Woodstock Institute. (Pl.'s Facts, Ex. N, Smith Decl. ¶ 1.) In his declaration, Smith describes a report completed by that organization, entitled "Paying More for the American Dream: A Multi-State Analysis of Higher Cost Home Purchase Lending." (*Id.* ¶¶ 3–6.) Davis also submitted a declaration from Nick Bianchi, a research analyst for the National Training and Information Center, which coordinates National People's Action. (Pl.'s Facts, Ex. Q, Bianchi Decl. ¶¶ 1–2.)

---

[6] Although these written statements are titled "Affidavits," they are not notarized and thus, are not technically affidavits. We shall refer to them as declarations herein.

Bianchi states that National People's Action published a report, "The Truth About Wells Fargo: Racial Disparities in Lending Practices," which examined the residential mortgage lending performance of Wells Fargo and its affiliates. (*Id.* ¶¶ 3–4.)

Defendants point out that these declarations fail to comply with Federal Rule of Civil Procedure 56(e) and 28 U.S.C. § 1746 because, *inter alia*, they are unsigned and undated. (Mot. to Strike at 1–4; Mot. to Strike Reply at 1–2.) A declarant or affiant must personally sign a statement; for filing purposes, that original document should be scanned and then submitted to the court electronically. *See* N.D. Ill. Gen'l Order on Elec. Filing, Gen'l Order No. 09-014, at 6–8 (June 5, 2009). Davis does not dispute the fact that these declarations were not personally signed by Smith and Bianchi, although she suggests that Defendants are impermissibly objecting to her evidence "on the very narrowest of technical grounds." (Resp. to Mot. to Strike at 1, 5.) In her response, filed December 15, 2009, Davis claims that she provided us with the original Smith and Bianchi declarations, with their verified signatures. (*Id.*) No such documents are attached to that filing, however. (*Id.*) Although we have what appear to be chambers courtesy copies of the Smith and Bianchi declarations, stamped December 30, 2009, they too are neither signed, nor dated, nor notarized.[7] Thus, the Smith and Bianchi statements are inadmissible as either affidavits or declarations.[8] *See, e.g., Sellers v. Henman*, 41 F.3d 1100, 1101 (7th Cir.

---

[7] Unlike the declarations submitted initially by Davis in support of her summary judgment motion, the December 30, 2009 versions have notary signature blocks, which are blank.

[8] In addition, the declarations indicate that the pertinent reports are attached as Exhibit B—but no documents are attached. Davis stresses that she disclosed the reports to Defendants' counsel several months ago, (Resp. to Mot. to Strike at 2), and Defendants do not contest this assertion, (Mot. to Strike Reply at 1–2). It appears that Davis submitted the Smith and Bianchi declaration exhibits as separate documents for summary judgment purposes; indeed, the

1994) (noting that a motion to strike had merit where the contested affidavit was "was unsigned and hence unsworn, and therefore did not comply with Rule 56(e)"); *Gross v. Radioshack Corp.*, No. 04 C 4297, 2007 WL 917387, at *7 n.14 (N.D. Ill. Mar. 26, 2007) (rejecting a written statement because it was not signed or dated and because it was neither sworn, nor made under penalty of perjury).

In addition, Smith and Bianchi did not verify, certify or otherwise state that the assertions in their declarations are "true and correct," as required by 28 U.S.C. § 1746. "The Seventh Circuit teaches that a court is not to be 'unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of [declaration] execution . . . are satisfied,' . . . but compliance with 28 U.S.C. § 1746 is mandatory and fundamental, not a 'non-substantive' requirement." *Knights v. Williams*, No. 02 C 5017, 2005 WL 1838427, at *3 (N.D. Ill. July 28, 2005) (quoting *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985)). In light of the above defects, we strike the Smith and Bianchi declarations and the exhibits described therein.

**B.      Declarations of Tony Paschal and Elizabeth Jacobson**

In support of her motion for summary judgment, Davis also submitted declarations from Tony Paschal and Elizabeth Jacobson, two former Wells Fargo employees who worked in Virginia and Maryland, respectively. (Pl.'s Facts, Ex. R, Paschal Aff. ¶¶ 1–2; Ex. S, Jacobson Aff. ¶¶ 1–3.) Paschal and Jacobson originally prepared these declarations in April 2009 for a

---

Woodstock Institute's report can be found as Exhibit M and the National People's Action report appears as Exhibit P. Although we decline to base our decision on this particular issue, the reports arguably remain unverified by virtue of being separated from the authenticating declarations.

lawsuit pending in the United States District Court for the District of Maryland, *Mayor and City Council of Baltimore v. Wells Fargo Bank, N.A. et al.*, Case No. 08 C 0062 ("Maryland case"). Although these declarations comply with 28 U.S.C. § 1746, Defendants contend that Davis cannot rely on Paschal's and Jacobson's testimony because she neglected to disclose them as potential witnesses pursuant to Rule 26. (Mot. to Strike at 5; Mot. to Strike Reply at 2.)

In response, Davis does not deny that she failed to disclose Paschal and Jacobson. (*See* Resp. to Mot. to Strike at 4–5.) Pursuant to Rule 37, Davis may not use this evidence unless her failure to identify Paschal and Jacobson was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); *see David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (reiterating that the "sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation . . . was either justified or harmless") (internal quotation omitted). Although she does not address this argument explicitly, Davis presumably contends that her violation of Rule 26 was justified or is harmless because Wells Fargo, a defendant in the Maryland case, already had access to these declarations. (Resp. to Mot. to Strike at 4–5.) Regardless, Davis was responsible for informing Defendants—including Litton Loan, who does not seem to be involved in the Maryland case—of all potential witnesses and persons with knowledge of facts relevant to *her* case. *See* Fed. R. Civ. P. 26(a), (e). We are unwilling to assume Defendants' constructive knowledge of the Maryland case.

As a practical matter, Defendants would have no reason (and Davis has not suggested any such reason) to suspect that declarations used in the Maryland case would be offered as evidence in the present case, particularly as neither Paschal, nor Jacobson, testifies with any personal knowledge of Davis's loan. Even if all parties knew that evidence from the Maryland case could

be used here, and even if we further assume such evidence is relevant to the present case, Rule

26 obligated Davis to inform Defendants specifically what witnesses and other evidence would

be introduced.  *See Davis v. City of Springfield, Ill.*, No. 04 C 3168, 2006 WL 2699333, at \*3–4

(C.D. Ill. Sept. 19, 2006) (rejecting depositions taken in a related case where plaintiff failed to

disclose the witnesses and further noting that there is "no reason that [defendant] would assume

that every person who might be deposed in [the other case] might also be a witness in this case").

Discovery closed in this case more than six months ago and Defendants had no opportunity to

conduct discovery as to these witnesses or their testimony.[9]  Under these circumstances, we find

that Davis's Rule 26 violation was not substantially justified and, moreover, prejudices

Defendants.  Accordingly, we strike the Paschal and Jacobson declarations.

## II.      MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper only when "there is no genuine issue as to any material fact

and . . . the movant is entitled to a judgment as a matter of law."  Fed R. Civ. P. 56(c)(2).  A

genuine issue for trial exists when "the evidence is such that a reasonable jury could return a

verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510, (1986).  This standard places the initial burden on the moving party to identify

"those portions of the pleadings, depositions, answers to interrogatories, and admissions on file,

_____

[9] Davis's unsupported argument that this testimony is permissible under Federal Rule of
Evidence 807 ("FRE 807") misses the mark.  (Resp. to Mot. to Strike at 5.)  FRE 807 is the
residual exception to the hearsay rule, which permits the use of hearsay testimony in very limited
circumstances where the evidence has "circumstantial guarantees of trustworthiness."  Fed.
R. Evid. 807; *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, (7th Cir. 2006) (explaining that
this exception must be narrowly construed when applicable).  This exception is irrelevant here,
as we are not addressing whether the testimony offered by Paschal and Jacobson is hearsay.
Rather, the question before us is whether Paschal and Jacobson's statements (hearsay or not)
may be admitted despite Davis's violation of Rule 26.

together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotations omitted). Once the moving party meets this burden of production, the nonmoving party "may not rely merely on allegations or denials in its own pleading" but rather must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all reasonable inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

### A.  Applicability of Sections 3604 and 3605

#### 1.  Section 3605

Davis contends that Defendants have violated § 3605 of the FHA, which makes it "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms of conditions of such a transaction, because of race . . . ." 42 U.S.C. § 3605(a). The FHA then, in pertinent part, defines "residential real estate-related transactions" to include "the making and purchasing of loans or providing other financial assistance . . . for purchasing, constructing, improving, repairing, or maintaining a dwelling." *Id.* § 3605(b).

Defendants argue that Davis's claim does not implicate the FHA, particularly § 3605, because they did not enter into—or refuse to enter into—any loan with Davis. (Defs.' MSJ Mem. at 4–5; Defs.' MSJ Reply at 3–4.) In response, Davis presents no legal argument in support of her § 3605 claim; indeed, she defends only her § 3604 claims. (Pl.'s MSJ Resp. at 3–4.) Nonetheless, as Defendants' contend, § 3605 applies only to transactions involving the

"making or purchasing of loans."  42 U.S.C. § 3605(a); *see Moore v. FDIC*, No. 08 C 596, 2009

WL 4405538, at *5 (N.D. Ill. Nov. 30, 2009) (dismissing a § 3605 claim because plaintiffs had

not alleged that "they attempted to engage in a real estate-related transaction" but rather alleged

misconduct occurring post-default); *Davis v. Countrywide Fin. Corp.*, No. 09 C 10228, 2009 WL

2922896, at *3 (E.D. Mich. Sept. 9, 2009) (dismissing a § 3605 claim related to an allegedly

wrongful foreclosure because the defendants "did not transact directly with the [p]laintiffs for

*either* the [o]riginal [m]ortgage or the [r]efinance [m]ortgage").  There is no question here that

Defendants did not enter into any loan directly with Davis, (Defs.' Facts ¶¶ 13, 19), and thus,

their conduct is not covered by § 3605.

### 2.    Section 3604

In addition to her § 3605 claim, Davis asserts claims under § 3604, which prohibits

discrimination in the sale or rental of housing, as opposed to real estate-related transactions as

discussed above.  42 U.S.C. § 3604.  Section 3604(a) makes it illegal, among other things, to

"refuse to sell or rent . . . or to otherwise make unavailable or deny, a dwelling to any person" on

the basis of race.  *Id.* § 3604(a).  Section 3604(b) more broadly bans discrimination "against any

person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of

services or facilities in connection therewith" because of race.  42 U.S.C. § 3604(b).  Davis

contends that Defendants' efforts to foreclose on her home, along with their "deplorable

practice" of assuming or servicing "loans that are designed to fail," violate § 3604.  (Pl.'s MSJ

Mem. at 4, 8 (comparing Defendants' attempts to take her home with constructive eviction).)

Defendants assert that Davis's § 3604 claims fail because § 3604 "does not protect

. . . intangible interests in the already-owned property."[10]  (Defs.' MSJ Reply at 2 (quoting *Southend Neighborhood Improvement Assoc. v. Cty. of St. Clair*, 743 F.2d 1207, 1210 (7th Cir. 1984) (rejecting the argument that defendants violated § 3604 by refusing to properly manage their properties in plaintiffs' neighborhood, resulting in lower property values)).)  The Seventh Circuit has previously stated that the FHA "contains no hint either in its language or its legislative history of a concern with anything but *access* to housing."  *Halprin v. Prairie Single Family Homes of Dearborn Park Assoc.*, 388 F.3d 327, 329 (7th Cir. 2004) (dismissing claim of post-acquisition harassment by other property owners).  Nonetheless, both *Halprin* and the Seventh Circuit's recent decision in *Bloch v. Frischholz* leave open the possibility that § 3604 "may reach post-acquisition discriminatory conduct that makes a dwelling unavailable to the owner or tenant, somewhat like a constructive eviction."  *Bloch*, 587 F.3d 771, 776 (7th Cir. 2009); *Halprin*, 388 F.3d at 329 ("As a purely semantic matter the statutory language might be stretched far enough to reach a case of . . . 'attempted constructive eviction.'").  We question whether Davis's claim is sufficiently analogous to an attempted constructive (or actual) eviction, as suggested in *Halprin* and *Bloch*, to be actionable under the FHA.  For example, neither *Halprin* nor *Bloch* addressed whether a mortgage holder with an apparent right to demand payment or pursue foreclosure could be liable under § 3604 for engaging in such conduct.[11]

---

[10] Defendants also point out that Davis's § 3604 arguments are undeveloped.  (Defs.' MSJ Resp. at 2.)  Nonetheless, for the sake of completeness, we shall address them briefly.

[11] We acknowledge that Davis, now through her estate, contests Defendants' right to collect on her loan.  Davis, for example, staunchly insists that Defendants "are liable for the loan's defects" based on the misconduct of the now-defunct Mortgage Express.  (Pl.'s MSJ Reply at 2; *see also* Pl.'s Resp. Defs.' Facts ¶¶ 17–18 ("Plaintiff denies any relationship with Wells Fargo because she does not owe Wells Fargo or the described trust any money whatsoever for a debt.").)  That issue is not directly before us and, furthermore, the record shows that no

Although we are not convinced that the FHA applies here, we also need not decide the issue. For as discussed further below, even assuming § 3604 applies, Davis has not offered any evidence whatsoever that race played a part in Defendants' decision-making process.

**B.      Evidence of Discrimination**[12]

To succeed on her FHA claims, Davis must either prove Defendants' discriminatory intent or show that Defendants' conduct has a disparate impact on African-Americans.[13] *Bloch*, 587 F.3d at 784; *Southend Neighborhood Improvement Assoc.*, 743 F.2d at 1210; *Flores*, 2003 WL 1607795, at *4. Davis must "show that race played some role in [Defendants'] decision" in order to succeed with her claim; at the very least, she must raise a question of material fact on this issue to survive Defendants' motion. *Saldana v. Citibank*, No. 93 C 4164, 1996 WL 332451, at *2 (N.D. Ill. June 13, 1996); *see Latimore v. Citibank, F.S.B.*, 979 F. Supp. 662, 664–64 (N.D. Ill. 1997); *Watson v. Pathway Fin.*, 702 F. Supp. 186, 189 (N.D. Ill. 1988); *Kaplan v. 442 Wellington Coop. Bldg. Corp.*, 567 F. Supp. 53, 57 (N.D. Ill. 1983).

---

court has so ruled. To the contrary, the Kankakee county court declined any such holding. (Pl.'s Facts, Ex. G, *Foreclosure Order* at 4.) That court held that Davis was entitled to assert affirmative defenses that, if proven, might stave off the foreclosure. (*Id.* at 3.) Judge Wenzelman did not conclude that the existence of potential foreclosure defenses voided the mortgage or translated into affirmative liability for Defendants on any theory. (*Id.* at 3–4.)

[12] For purposes of this analysis only, we assume that Davis established a *prima facie* case for a claim under either § 3604(a) or (b).

[13] In so doing, Davis's claim resembles a Title VII action. *See Krieman v. Crystal Lake Apartments Ltd. P'ship*, No. 05 C 0348, 2006 WL 1519320, at *7 (N.D. Ill. May 13, 2006) ("The provisions of the FHA have been interpreted as functionally equivalent to Title VII provisions."); *Flores v. Vill. of Bensenville*, No. 00 C 4905, 2003 WL 1607795, at *4 (N.D. Ill. Mar. 26, 2003) (describing the elements of a *prima facie* case under §§ 3604(a)-(b) and the burden-shifting analysis, both familiar from Title VII cases).

Turning first to her disparate impact claim, Davis contends that Defendants' practices have a disproportionate effect on minority neighborhoods.[14] "To succeed on this claim, [Davis] must first demonstrate that the [policies or practices], in fact, have a disproportionate impact." *Flores*, 2003 WL 1607795, at *6 (addressing whether a municipality's occupancy regulations affected Hispanics in violation of the FHA). Davis relies on her Exhibits M through S for support of this argument. (Pl.'s MSJ Mem. at 5–6, 8; Pl.'s MSJ Reply at 1.) As discussed above, however, these materials are not properly before us. Thus, even assuming that Davis sufficiently articulated Defendants' wrongful practice, she has not raised a question of fact as to its allegedly disproportionate effects. *Id.* (noting that plaintiffs did "not even vault the first hurdle" where they proffered outdated statistics, inadmissible hearsay and other insufficient evidence in their attempt to demonstrate a disproportionate impact); *see, e.g.*, *Saldana*, 1996 WL 332451, at *4–5 (rejecting a disparate impact claim based on statistical data that was either incomplete or too generic).

Davis's disparate treatment claim fares no better, for similar lack of proof. The parties dispute whether Defendants were aware of Davis's race prior to the inception of this lawsuit.[15]

---

[14] It is undisputed that Davis's neighborhood in Kankakee, Illinois is occupied predominantly by African-Americans. (Pl.'s Facts ¶ 2.)

[15] Davis's denial—based on the fact that Defendants saw her during the foreclosure proceedings—is not entirely persuasive. (Pl.'s Resp. to Defs.' Facts ¶ 33.) Both the bench trial and *Foreclosure Order* occurred *after* this lawsuit was filed in 2007. (Defs.' Resp. to Pl.'s Facts ¶ 6; *see id.*, Ex. A, Haney Aff. ¶ 10; *see also* Pl.'s Facts, Ex. E, Mot. for Reconsideration.)
In addition, Davis's Home Mortgage Disclosure Act argument is misplaced. (Pl.'s MSJ Resp. at 7; *see* Pl.'s Resp. to Defs.' Facts ¶¶ 25, 28, 33.) Even if Defendants ran afoul of that statute, by allegedly failing to collect information about a borrower's race, that violation would seem to support Defendants' claim that they did not know Davis was African-American, not Davis's position.

(Pl.'s Resp. to Defs.' Facts ¶¶ 25, 28, 33.)  Even assuming that Defendants knew (1) that Davis was African-American and (2) had been defrauded by Mortgage Express, there is no evidence from which a reasonable jury could infer discriminatory intent.  In her deposition, Davis said she thought that "if [she] . . . wasn't an old black lady," Defendants (specifically, Wells Fargo) would have made amends and paid her the damages assessed against Mortgage Express in the fraud case.  (Pl.'s Facts, Ex. B, Davis Dep. at 26–28.)  Nonetheless, "[a §] 3604 case is never to be made out on the mere suspicion that because the plaintiff's minority status is known to the defendant, the defendant's action . . . necessarily resulted at least in part from some pre-existing bias." *Kaplan*, 567 F. Supp. at 59.  And that is all that Davis has provided here: her unsubstantiated suspicion of Defendants' intent. *Id.* (granting summary judgment where "plaintiffs have not offered one shred of evidence that would lead a reasonable mind to the proposition that discrimination based on race or national origin was ever intended").

To the contrary, Defendants submitted evidence that they do not satisfy judgments that a borrower may have against another entity and that, moreover, this decision is not based on a borrower's race, color or age.  (Defs.' Facts, Ex. 1, 10/16/09 Ledet Aff. ¶ 20; Ex. 2, 10/21/09 Cohen Aff. ¶¶ 18–19.)  Interpreting the record before us in Davis's favor, Defendants have established a legitimate, nondiscriminatory reason for their actions.  Although Davis bears the burden of proving that Defendants' reason is pretextual, she has made no such showing. *See, e.g.*, *Flores*, 2003 WL 1607795, at *4 (explaining that the burden shifts to the plaintiff to "prove that the proffered reason is merely a pretext" for discrimination).  There is simply no evidence to suggest that race was a motivating factor behind Defendants' refusal to pay for Mortgage Liability's wrongdoing and their attempts to collect Davis's debt, including foreclosure.

Accordingly, because Davis has failed to raise a genuine issue of material fact as to Defendants' intent, she cannot proceed with her FHA claim.

## CONCLUSION

For the reasons set forth above, we grant Defendants' motion to strike (Dkt. No. 101) and motion for summary judgment (Dkt. No. 95). We deny Davis's motion for summary judgment (Dkt. No. 92). It is so ordered.

_Marvin E. Aspen_

Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: February 5, 2010